IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JEFFREY FEHR and AUDREY FEHR, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 08-1102-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JOHN KENNEDY and BATEMAN SEIDEL MINER BLOMGREN CHELLIS & GRAM, P.C., | ) ) ) ) | |
| Defendants. | ) ) | |

    Philip M. Lebenbaum
    Hollander, Lebenbaum & Gannicott
    700 Crown Plaza
    1500 SW First Avenue
    Portland, Oregon 97201-5825

        Attorney for Plaintiffs

    Janet M. Schroer
    Matthew J. Kalmanson
    Hoffman, Hart & Wagner LLP
    1000 SW Broadway, Twentieth Floor
    Portland, Oregon 97205

        Attorneys for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Jeffrey and Audrey Fehr bring this case against attorney John Kennedy and the law firm that employed him at the time, Bateman Seidel Miner Blomgren Chellis & Gram, P.C., for Kennedy's alleged legal malpractice while representing the Fehrs in state court cases. The Fehrs' claim centers on Kennedy's representation during a mediation. Before the court is Defendants' Motion for Summary Judgment (#31). For the reasons below, I grant the motion and dismiss the action.

## FACTS

Jeffrey Fehr was a member of a limited liability company called Advanced Seismic Hardware LLC ("ASH") which fabricates and sells seismic restraint devices. Audrey Fehr was an independent contractor of ASH.

The Fehrs and Richard LaFave created Clean Fabrication, Inc. ("CleanFab") while the Fehrs were still associated with ASH. Audrey Fehr owned 49 percent of CleanFab, LaFave owned 51 percent, and Jeffrey Fehr had no ownership interest. ASH and CleanFab were in competition.

In August 2005, ASH filed a case against Jeffrey Fehr in Multnomah County Circuit Court, alleging that Jeffrey Fehr breached his fiduciary duty to ASH and committed fraud by creating a company to compete with ASH. In September 2005, ASH filed a second case in Multnomah County against Audrey Fehr, LaFave, and CleanFab, alleging that they conspired to harm ASH. In August 2005, Jeffrey Fehr filed a case in Multnomah County against the majority owners and managers of ASH, Ed Westerdahl and Joe Morgan ("Fehr v. Westerdahl"). The two cases filed by ASH were consolidated for trial ("ASH v. Fehr"). John Kennedy was the Fehrs' lawyer in ASH v. Fehr and Jeffrey Fehr's lawyer in Fehr v. Westerdahl.

Mediator John Barker held a joint mediation in the three cases in April 2006. Jeffrey Fehr, LaFave, Westerdahl, Morgan, and their respective attorneys, including Kennedy, attended. Audrey Fehr did not attend the mediation. The mediation did not result in a settlement. Barker and Westerdahl do not consent to the disclosure or admissibility in this proceeding of any communications from that mediation.

The Honorable Douglas Beckman held a bench trial in ASH v. Fehr and found the Fehrs, LaFave, and CleanFab jointly and severally liable to ASH for $364,503. Judge Beckman found: (1) Jeffrey Fehr breached his fiduciary duties to ASH by competing while still a member of ASH by taking customers and key employees away from ASH and undercutting ASH's prices; (2) Jeffrey Fehr committed fraud by telling Westerdahl that he was going to work in a noncompeting business; and (3) Audrey Fehr, LaFave, and CleanFab conspired to assist Jeffrey Fehr breach his fiduciary duties. Judge Beckman also awarded ASH $51,359.25 in attorney fees against Jeffrey Fehr.

In November 2006, Jeffrey Fehr dismissed Fehr v. Westerdahl.

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

The Fehrs allege that at the mediation, Kennedy failed to assess and advise them of the risk of going to trial and specifically discounted and contradicted the mediator's assessment of the likelihood of success of ASH's claims and the consequences of a loss at trial. Kennedy's failures allegedly caused the Fehrs to reject an offer to settle the case which was much more favorable than the result achieved at trial.

To prove a legal malpractice claim, a plaintiff must prove that his attorney breached the "duty to use that care, skill and diligence that would ordinarily be used by lawyers in the community in similar circumstances" and that the attorney's breach of the duty caused damage. Sommerfeldt v. Trammell, 74 Or. App. 183, 187, 702 P.2d 430 (1985); Tydeman v. Flaherty, 126 Or. App. 180, 183, 868 P.2d 755 (1994).

Defendants move for summary judgment because they contend that the Fehrs cannot prove their malpractice claim without disclosing and admitting into evidence communications that occurred during the mediation. Defendants argue that the necessary disclosure is prohibited by Oregon statute because other parties at the mediation, both Westerdahl and mediator Barker, refuse to consent to the disclosure. Without the disclosures, defendants maintain that the Fehrs are unable to prove that ASH offered a settlement which was less than the judgment entered against the Fehrs after the bench trial. Likewise, defendants maintain that the Fehrs cannot prove that Kennedy discounted and contradicted the mediator's assessment of the case and failed to explain the consequences of a loss at trial. According to defendants, the Fehrs' case depends entirely on mediation communications from and between LaFave, Morgan, Westerdahl, Barker, and themselves.

The relevant statutes read as follows:

(1) Except as provided in ORS 36.220 to 36.238 [exceptions mostly concerning public bodies]:

(a) Mediation communications are confidential and may not be disclosed to any other person.

(b) The parties to a mediation may agree in writing that all or part of the mediation communications are not confidential.

(2) Except as provided in ORS 36.220 to 36.238:

(a) The terms of any mediation agreement are not confidential.

(b) The parties to a mediation may agree that all or part of the terms of a mediation agreement are confidential.

ORS 36.220.

(1) Except as provided in ORS 36.220 to 36.238, mediation communications and mediation agreements that are confidential under ORS 36.220 to 36.238 are not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding.

(2) A party may disclose confidential mediation communications or agreements in any subsequent adjudicative proceeding if all parties to the mediation agree in writing to the disclosure.

(3) A mediator may disclose confidential mediation communications or confidential mediation agreements in a subsequent adjudicatory proceeding if all parties to the mediation, the mediator, and the mediation program, if any, agree in writing to the disclosure.

(4) In any proceeding to enforce, modify or set aside a mediation agreement, confidential mediation communications and confidential mediation agreements may be disclosed to the extent necessary to prosecute or defend the matter. At the request of a party, the court may seal any part of the record of the proceeding to prevent further disclosure of mediation communications or agreements to persons other than the parties to the agreement.

(5) In an action for damages or other relief between a party to a mediation and a mediator or mediation program, confidential mediation communications or confidential mediation agreements may be disclosed to the extent necessary to prosecute or defend the matter. At the request of a party, the court may seal any

part of the record of the proceeding to prevent further disclosure of the mediation communications or agreements.

(6) [child or elder abuse]

(7) The limitations on admissibility and disclosure in subsequent adjudicatory proceedings imposed by this section apply to any subsequent judicial proceeding, administrative proceeding or arbitration proceeding. The limitations on disclosure imposed by this section include disclosure during any discovery conducted as part of a subsequent adjudicatory proceeding, and no person who is prohibited from disclosing information under the provisions of this section may be compelled to reveal confidential communications or agreements in any discovery proceeding conducted as part of a subsequent adjudicatory proceeding. Any confidential mediation communication or agreement that may be disclosed in a subsequent adjudicatory proceeding under the provisions of this section may be introduced into evidence in the subsequent adjudicatory proceeding.

ORS 36.222.

I.  Interpretation of "Any Subsequent Adjudicatory Proceeding"

The Fehrs argue that the ORS 36.222 phrase–"any subsequent adjudicatory proceeding"–extends only to the trial before Judge Beckman in ASH v. Fehr, and any appeal of that trial, but not to this separate legal malpractice case. They contend that in context, a "subsequent adjudicatory proceeding" can only be the adjudication of the controversy that was the subject of the mediation process.

Defendants maintain that the plain meaning of "any subsequent adjudicatory proceeding" extends to cover this action. They note that ORS 36.222(7) undercuts the Fehrs' position by the subsection's reference to any subsequent judicial proceeding, administrative proceeding, or arbitration proceeding. Defendants also rely on ORS 36.222(4) and (5) for their exceptions to the nondisclosure/nonadmissibility rule in proceedings to enforce, modify, or set aside a mediation agreement and actions for damages or other relief between a party to a mediation and the mediator. Because the exceptions apply in situations other than the adjudication of the subject of the mediation, defendants claim that the Fehrs' argument is unpersuasive.

Page 6 - OPINION AND ORDER

ORS 36.222(4) relates to enforcing, modifying, or setting aside a mediation agreement, which arguably falls within the Fehrs' limited interpretation of "subsequent adjudicatory proceeding." I agree with defendants, however, that the reference to judicial, administrative, and arbitration proceedings in ORS 36.222(7) leads to a broad interpretation, as does the reference to an action for damages against the mediator in ORS 36.222(5). None of these proceedings are an adjudication of the controversy at issue in the mediation. The Fehrs were unable to locate any cases which discuss and adopt their limited interpretation, although the reported cases do concern later proceedings on the subject of the mediation.

I am unpersuaded by the Fehrs' arguments and conclude that "subsequent adjudicatory proceeding" is not limited to adjudication of the controversy subject to the mediation process. Accordingly, this action is a "subsequent adjudicatory proceeding" to the mediation.

II.     Constitutionality of ORS 36.222

The Fehrs contend that ORS 36.222 is only constitutional under Article 1, Section 8 of the Oregon Constitution if it is interpreted as limited to the same proceeding. According to the Fehrs, this limitation keeps the scope of the restraint on free speech confined within the historical exception that offers of compromise are not admissible to prove liability. The Fehrs maintain that there is no historical exception to the introduction of a proposed mediation agreement in a subsequent lawsuit alleging malpractice occurring at the mediation.

Defendants argue that constitutional free speech provisions are not implicated because ORS 36.222 does not regulate speech. According to defendants, the statute prohibits the compelled disclosure and use of mediation communications as evidence in court. Thus, they claim that the Fehrs do not fail to prove their claim because their speech is regulated but because they failed to establish that the other mediation participants consent to the disclosure or

admissibility of the mediation communications. Once the Fehrs agreed to the mediation process, they were bound by the statute's confidentiality provisions. Defendants also note that the Fehrs disclosed mediation communications in this proceeding in the sealed affidavits but are not being penalized for doing so.

Article I, Section 8, of the Oregon Constitution, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

I agree with defendants that ORS 36.222 regulates speech no more than many evidentiary rules, such as the attorney-client privilege. The statute makes certain communications confidential, prohibits disclosure of the communications, and prohibits the admission of the communications into evidence. Alternatively, if you assume that the statutory prohibition of disclosure of a mediation communication, even when not compelled to do so, implicates the person's free speech rights, the prohibition falls within the historic exception for settlement discussions that also underlies the inadmissibility of offers of compromise to prove liability for a claim. Fed. R. Evid. 408 advisory committee's note (exclusion promotes "the public policy favoring the compromise and settlement of disputes"); State v. Robertson, 293 Or. 402, 412, 649 P.2d 569 (1982) (laws aimed at the content of speech violate Article I, Section 8 of the Oregon Constitution "unless the scope of the restraint is wholly confined within some well-established historical exception").

I conclude that ORS 36.222 is constitutional under Article 1, Section 8 of the Oregon Constitution even when applied to other than the same proceeding.

III.    Interpretation of "Mediation Communications"

The Fehrs contend that their private communications with Kennedy, outside the presence of the mediator and not disclosed to the other parties to the mediation, do not fall within ORS 36.222's definition of "mediation communication" and are consequently admissible. The Fehrs claim that this argument covers Kennedy's professional opinion to Jeffrey Fehr on the likelihood of success at trial, even though the opinion was given when evaluating an offer at mediation.

Defendants note that the statute does not have an exception for attorney/client privileged communications. Even assuming that the Fehrs are correct, defendants argue that conversations between Jeffrey Fehr and Kennedy cannot establish: (1) what mediator Barker said about the Fehrs' chances at trial; (2) whether ASH made them an offer they could have accepted; (3) the terms of the offer and whether it was better than the eventual judgment; (4) LaFave's settlement position and what he would have done under a hypothetical scenario; and (5) what Kennedy and LaFave discussed about the risks of trial and the benefit of the settlement.

> "Mediation communications" means:
>
> (a) All communications that are made, in the course of or in connection with a mediation, to a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings; and
>
> (b) All memoranda, work products, documents and other materials, including any draft mediation agreement, that are prepared for or submitted in the course of or in connection with a mediation or by a mediator, a mediation program or a party to, or any other person present at, mediation proceedings.

ORS 36.110(7).

At the oral argument, counsel for the Fehrs agreed that the draft settlement proposal was a mediation communication and was critical to Jeffrey Fehrs' case. I agree. Without the draft settlement proposal, Jeffrey Fehr cannot prove that a possible settlement would have been a

Page 9 - OPINION AND ORDER

better outcome than the result of the bench trial.  Thus, I do not think there is any reason to look at all the different types of communications to determine if they are all mediation communications.  Because the draft settlement proposal is inadmissible as a mediation communication, Jeffrey Fehr cannot prove the malpractice claim.  I grant summary judgment against his claims.

Audrey Fehr did not attend the mediation.  She claims that Kennedy never advised her of any settlement offer, thus depriving her of the opportunity to have input in the settlement decision.  Audrey Fehr argues that the lack of communication is not covered by ORS 36.210 and is admissible in support of the malpractice claim.

Audrey Fehr testified that she did not attend the mediation but that she knew her husband was attending and believed that he could take care of her interests.  Defendants thus argue that Audrey Fehr has no claim for a lost settlement opportunity.

To prevail in the malpractice claim, Audrey Fehr has to prove that Kennedy breached his duty to her and the breach caused her damage.  Thus, even if the breach of duty is a failure to keep her informed of what was happening during the mediation, Audrey Fehr will have to prove that there was a settlement offer which was better than the result of the bench trial.  She cannot do this without admitting the draft mediation agreement, but the statute prohibits its admission.  Thus, Audrey Fehr also cannot prove her claim and I grant summary judgment dismissing it.

///

///

## CONCLUSION

Defendants' Motion for Summary Judgment (#31) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this <u>     24th          </u> day of July, 2009.


                                                <u>   /s/ Garr M. King            </u>
                                                Garr M. King
                                                United States District Judge